It pleases the court, your honors, Judge Keenan, Chief Judge Wilkinson, Judge Harris, my name is T.H. Stubbs, I represent the plaintiff, the appellant in this case, the Stubbs & Perdue, and my overall argument, I think, can be summarized very well in the case we have cited. It's a New Mexico bankruptcy court case entitled J.R. Hale Contracting Company v. Kaplan and the trustee. Your honor, I might add here that in my 41 years of practice, I don't believe I have seen a case that is as much on all fours with the issues we're addressing today than this one. Now, we know, of course, this case is not of presidential value in the Fourth Circuit, it's not even a Fourth Circuit bankruptcy case, but I point to it as an example of an analysis, an analysis of the facts and circumstances almost identical to what we have here, addressing the same statutes, the same amendments, the same corrections, the same concepts that have been addressed in earlier cases that are here. There are some slight differences. One is in the procedural context. The Hale case was brought as a complaint by the lawyer who is seeking, like we are, his fees for services rendered during Chapter 11. In this case, the issues are brought before you based on the trustee, Jim Angells, some motion in aid of distribution, but the issues are the same. Based on Judge Daub's, the bankruptcy court's decision, it's a footnote on the page 471 of the appendix, references the dates of the conversion confirmation versus the date of the effective date of the statute. I think all parties acknowledge that December 22nd, 2010 was the effective date. I notice on page 34 of the appellee's brief, they raise that issue, although it's difficult for me to understand totally. Let me just summarize the overall picture here. We are looking at a statutory sequence, 503B, which relates to administrative claims, 507A1 at seek, which relates to priorities. And statute section 724B2, which relates to the relation of liens under the liquidation portion of the code as to what the trustee does. The, just kind of to summarize, we've got three significant dates. Prior to 2005, I don't think there's any dispute that the, our party, the attorney seeking expenses under Chapter 11 was entitled to subordinate the tax claim. The, it was not actually subordinate, but as the Hale case says, it steps in the place of, or in the slot which takes the place of the priority of the tax claim. In the year 2005, what we refer to in these briefs as the BAP-CIPA version was passed, which Halevich says, and I don't totally agree, but let's assume for argument here, that it was the intent of Congress to correct that previous law and give the Chapter 7 trustee a priority for expenses, but not the Chapter 11. There was some feeling in Congress that this was not a correct, correction, so to speak, and I think most of the parties agree that the BAP-CIPA version did not accomplish the job. And consequently, on, in December of 2010 is when the BTCA version was passed. What we are asking for is our services that were performed to the estate prior to December the 10th, 2010. And our brief shows the amount is about $105,000. If you include work in progress up to that date, it's about $123,000. Now, I'm not going into detail, but let me suggest that what we refer to as the mistake or the, let's just refer to it as a mistake, excepting, Hale's excepting the other party's argument that the BAP-CIPA version that took place in 2005 intended to correct the problem, but did not. In essence, what the problem was, and I'm not going into detail, but the commentators and the cases refer to it as the improper placement of a parenthetical phrase. And this is spelled out. There's no question when Congress passed the 2005 BAPCA amendments that what it wanted to do was to give tax liens priority over the attorney's fees, which were just eating up the assets of the estate. The administration fees were just eating up the entire assets of the estate to the detriment of the secured creditors, and Congress wanted to fix that. And then, in the course of renumbering, some things got lost in the shuffle, and so Congress passed BIPCA, and BIPCA was a technical correction. It said, here's what we plainly intended to do all along. Your Honor, let's assume that for this argument and for this case. When you, we all know how legislation is made. You've got competing lobbying interests, things of that nature, but I'm taking your suggestion for this case. The key to it, and as the Hale's case points out, is that as we look at these statutes, first condition is that it makes sense. The language of the BIPCA version made sense, and I would suggest you look at pages 15 and 16 of our brief, plus the Hale explanation. And I think that was one of the keys of that analysis, which it says, it's not absurd. If that's the case, which we have here, if it makes sense, it's not absurd, then the first obligation of the court is to look at the wording of the statute itself. We don't need to go to the legislative history. Counsel, can I just ask you just a question about this? Sure. So, and I just want to make sure I understand the chronology. The way that 724b2 read before it was corrected, at that time, was your, had your case already converted to Chapter 7? What's the relationship between passage of the correction legislation in 2010 and when the case converts and Section 724 becomes relevant for the first time? Let's take several dates. The effective date of the, let's say, the final correcting statute, the BTCA. Right. That was effective on December the 22nd, 2010, which was approximately one year before our conversion. Okay, but that's different from Hale, right? And that's different from Hale. It seems like a really important difference when you're talking about retroactivity, right? Yes, ma'am. Let me, I'll address that in a minute. Now, I agree that retroactivity, particularly in this Landgraf case, which both sides cite, but we like it, our side, a little bit better. I'll make it, give you some quotes for it. 2009 was the conversion date in Hale's, and 2011, a year after the effective date, was the conversion date in our case. And 2010, of course, was the effective date of the statute. Now, it's hard. I've read this a lot. It's hard for me to understand, but if we talk about a distinction without a difference, I'm not sure I can find where you're talking about. Were your expenses incurred in connection with the Chapter 11? Yes, sir. Bankruptcy. Yes, sir. Now, and what we're asking for, if you look. But Section 724 applies to Chapter 7. It's confusing, Your Honor, but 724, under the old BAP-CEPA version, it was clear. But by the time the case was converted to Chapter 7, the era that you say is not a Scrivener's era. I don't know. I mean, I don't, you know. Let's assume it was for our purposes. Because I, it does seem to me that Congress had one thing in mind throughout all of these different iterations, which was to give tax liens a priority over administrative expenses, which were consuming Chapter 11 estates or whatever. But anyway, this case was converted from a Chapter 11 proceeding to a Chapter 7 proceeding. Yes. And by the time of the conversion, wasn't the era that you say was not a Scrivener's era? That's a whole different question. Yes. But wasn't the era that we're talking about, hadn't that been fixed by the time of the conversion? Let me, let me make sure we're talking about specifics versus the distinction we're making, which is the only distinction I can find in the arguments or what the court says, is the distinction between Hale and us as being the sequence of conversion versus correction. Let me ask you this question. I've looked at. No, I'm trying to, you're backing up my question. Yes. I thought your expenses were incurred in connection with the Chapter 11 bankruptcy. That's correct. And they were. And then I thought this case was converted from a Chapter 11 to a Chapter 7. Yes. And I thought that the whole brouhaha over the enumeration and renumbering and everything had been corrected by the time the case was converted. That's true. Because as I understand it, Section 724 simply doesn't apply. It applies to Chapter 7, but not to Chapter 11. The 724 applies to the confusion came in that parenthetical part that said we're only look at Chapter 7 expenses as an exception. The parenthetical part should have come in the first part of, this is the BAPSIPA version. And the parenthetical part mistakenly, supposedly came after the 70182. Now, that is, if you look at the two different sections, let me give you a bottom line here. If you've got a statute that has confusion, which is the BAPSIPA version. And I think let's agree with that. I'm not sure. Let's agree with that for here. And then you have a correcting statute, which took effect in 2010, which was ahead of our conversion. But doesn't that make our case stronger if we are asking only for those fees, which we are, that incurred prior to the effective date of the statute? The correcting statute, the 5, that'd be the 724, came after. In other words, the services that were performed were performed before the effective date of the statute and before the conversion. So we're not asking for any payment for services after conversion. In fact, we're not looking for reimbursement between the effective date of the statute and the conversion. We're only asking for services performed during Chapter 11 before the effective date of the statute and before the conversion. So that's why I say it's a distinction rather than a difference. If the effective, the conversion didn't come through later, we're not asking for any portion of our expenses as a site in between effective date and conversion or after conversion to Chapter 7. So, and again, what I'm, the issues that we are having here, which is coming back to Judge Harris, your question here is the issue of retroactivity. That's a major issue here, and I think Hales does it strongly, and the case of Landgraf. Can you reserve some of this for rebuttal, sir? It would, would I do that? Yes. Certainly, I know my time is. You've reserved some time for rebuttal. I have, and I will come back and start with, excuse me, I wasn't looking at the clock. I wasn't looking at the, I'll start with the Landgraf issue. Thank you. Mr. Lulis. Thank you, Your Honor. May it please the Court, Paul Lulis, appearing on behalf of the United States of America, and together arguing with me this morning is Mr. James Engle, the trustee who will address one particular issue of concern regarding the administration of Chapter 7 bankruptcy estates. The Court should affirm the judgment of the District Court first and foremost because the BTCA version of the statute that was in effect at the time that the case converted, at the time that the trustee made his motion in aid of distribution, at the time that the bankruptcy court made its judgment, and at the time that the District Court made its judgment. The BTCA version of the statute, which is the corrected version of the statute, is the version that was in effect at all times relevant in this case. As Your Honor correctly pointed out, Chapter 7 has no application during Chapter 7 proceedings. Section 724B2 had no effect whatsoever while this case was pending in Chapter 11, during the Chapter 11 portion of this case. So you're saying it doesn't matter whether this was a scrivener's error or not because the entire provision didn't apply to Chapter 11 proceedings? That's correct, Your Honor. The Court need not reach the question whether it was a scrivener's error or whether the BTCA affected a substantive change to Section 724B2 or merely a technical change. The Court need not address any of those questions so long as the Court determines that the corrected version was the version that was in effect at the time. I mean, it seems to me this pretty clearly is a scrivener's error because they had met a technical correction later and they did what they wanted to do all along. And in the course of renumbering, things fell between the cracks. But, you know, scrivener's errors are always a little tricky because you can say, well, Congress should get this right. It's not too much to ask that they get it right. But what you're saying is that a scrivener's error is not something we need to concern ourselves with. And the critical point here is that Section 724 doesn't apply to Chapter 11 proceedings. And while the case was in the, while the administrative expenses were being incurred, they were being incurred when the case was in Chapter 11. And that's when the case was converted, as it was, to a Chapter 7 bankruptcy. The technical error that we're all trying to decide whether or not was a scrivener's error incorrected prior to the conversion. Because I understand that's the essence of what you're trying to, that's the essence of the argument, is it? Yes, Your Honor, that is exactly correct. And if the Court agrees with that argument, there is no need to address the question whether there was a scrivener's error that was later corrected by the BTCA. You know, that's a little, I mean, we'll, we sort of, the thing about scrivener's errors, I, you know, I've, I've gone along with them and said, okay, and if there is a clear example of a scrivener's error, it's probably something like this when the, when the Technical Corrections Act corrected it. But, you know, I'm not really entirely comfortable with scrivener's errors because we, we're doing Congress's work for it. And it's not too much of Congress, it's not too much to ask of Congress that they draft precisely and get them, get the numbering straight. And that the courts aren't going to try to just sort of make sense of a stew. But that is, that's why I say your other point doesn't require us to get into that mess. No, it does not, Your Honor. And in fact, that is why the conversion date is, is a critical date here. And as, as the Court has already correctly pointed out, this case converted from Chapter 11 to Chapter 7, 11 months after the correction had already been implemented. And again, it was only on that date in November of 2011 that the provisions of Section 724 B2 had any impact whatsoever as to any matter. But the expenses were incurred here under Chapter 11. Yes, Your Honor. Yes. Regarding the Scrivener's error issue, I would just like to point out that in this case, if the court were to reach that question and then to analyze whether the statute, the BAPCA version of the statute could be read in any sensical way, the answer is actually no to that question. Because of the way that the parenthetical was placed in the earlier version of the statute, to interpret it in the way that the appellant presses would actually require the court to read, to ascribe no meaning whatsoever to the entire parenthetical. Okay. I understand that. At this point, I'm going to ask, do you have anything further to add to your argument? No, Your Honor. I'm going to ask my colleagues if they have any further questions. No, thank you. We have no further questions. Thank you, Your Honor. Okay. Mr. Angel, did you have something you wanted to add here? Just very briefly, Your Honor. Your Honor, I am a member of the Chapter 7 trustee panel for the Eastern District of North Carolina. My name's James B. Angel. I'm also the Chapter 7 trustee in this case. The policy matter I want to address is trustees. Trustees, we generally try to get court orders to approve whatever we do. If we get a court order, we act in accordance with the court order. We have judicial immunity, so we try to get them whenever we can, which gave rise to this motion in aid of distribution because there was some potential for conflict. In closing cases, and oftentimes our general procedure is we give notice of a proposed distribution. There's a period of time for people to object, and then if nobody objects, we make distributions. But we don't get an order with respect to final distributions, which exposes trustees some liability. Again, in cases where we're prudent about it or feel that we need to be cautious, we go ahead and do a motion for an order in aid of distribution. But trustees need clear guidelines as to which version of a statute they can rely on. Congress obviously has the power to implement effective date language in their statutes and say we're changing the statute as of a certain date or for all cases filed as of a certain date and for cases that were converted as of a certain date, et cetera. There's no effective date stated as my colleague pointed out, then it's generally effective upon enactment. The exception is this impermissible retroactive effect, and that's pervasive in bankruptcy because bankruptcy is at the bottom line just a fight over a pile of money. And when one creditor benefits from a change in legislation, then another creditor has a detriment, as is the case in this case. If the IRS wins, they get more money. If Mr. Stubbs wins, he gets more money. So there's the argument that there are rights that ought to attach as to when those rights attach for an impermissible retroactive effect is a guess. Because frankly, it could be when the services are provided, when the orders are entered, when the order authorizing the attorney's application is entered, that all those could be possibility, which means a trustee would have to go to great lengths in cases. What I'm concerned about is in the lower courts, they talk about the conversion date being important, and it is important conceptually, and if the cases had been filed as Chapter 7s on the conversion date, there's no question that the BTCA would apply. In this case, they were converted instead of actually filed as Chapter 7s on those dates. But as a trustee, I need to be able to look at a statute and know that I can rely on the statute that's presently in effect when I'm doing the action taken under the statute. If I could have five more seconds, I'll wrap it up. But basically, what I'd ask the court to do is while the conversion date's important, I think as trustees, we need to be able to rely on the statutes that are in effect on the date that we take an action and invoke the statute. On the date the bankruptcy court takes action. Yes, Your Honor. When I file my motion in aid of distribution, if the statute were to change between now and then, then I'd ask the court not to invite further ambiguity by referring to the conversion date as the key date. But I think the key date is the date that the statute's invoked. Thank you, Your Honors. Mr. Stavs? Your Honor, first, let me just address the issue on the retroactivity. I don't think really either parties are saying that the statute was retroactive. The acts that occurred that we referred to are the acts of our services to the Chapter 11. And just what is what was wrong with the trustee's argument? Because why was the bankruptcy court incorrect in applying the BTCA to the distribution of the estate? Because that was the law in effect at the time that it assigned priority to claims and made the distribution. And it's just it's another way that you lose, isn't it? Because the trustee is pointing out that there are a number of advantages to have bankruptcy courts apply the law in effect at the time of distribution and at the time that they assign priority to claims. Because it has the advantage of ease of administration because a bankruptcy court doesn't have to be sifting through different statutes applying to different time periods. And it also gives equality of treatment, I think, to different classes of creditors. So it has, what I'm saying is, why are you saying that this has, that there was an impermissible retroactive effect here when it seems to me that it occurs all the time that a bankruptcy court can assign, can make distributions based on the law in effect at the time it makes those distributions? If we adopt your view of retroactivity here and try to turn this into some kind of ex post facto claim, we're going to make a hash of bankruptcy administration. I mean, that's why I say this is, there are different ways you can lose this case. And this is another one, isn't it? Let me take those in order. If you look at retroactive, if Congress says in the statute itself, we're going to make that retroactive, that's enough to make it retroactive. If there is some sort of, I think the phrase is manifest injustice, let's not look at either of those here, but I'll give you several different phrases. What they talk about, and I'm looking at page 269 of Landgraft, which is one of our strongest arguments here. Are there any new legal consequences to events completed before it's enacted? I know those general rules. And again, it's not something we need to get into because we can, you know, we can, the narrowest way to decide the case is simply the date of the conversion. But if, you know, all I'm saying to you is if we go beyond that and talk about scrivener's errors and talking about which law the bankruptcy court permissibly applied, you know, those are additional hurdles for you. And they seem to, they do seem to present a considerable number of difficulties. Let me respond. The scrivener's error here, I would say is not applicable because as Hales made it clear, the statute makes sense as it is. And if the statute can make sense as it did in the BAPC perversion, then let's just look at the statute and we eliminate the scrivener's error issue. Now, go back to my original response to your question. Go ahead, Doug. I think we understand. We've been around these arguments. Okay. Yeah. Okay. In terms of, and I would again just submit, I think Hales is a correct analysis. Thank you. All right. We thank you. We'll take a brief recess and then return shortly to hear our third case.
judges: J. Harvie Wilkinson III, Barbara Milano Keenan, Pamela A. Harris